IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| BILLY JOE WALKER, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:13cv00425 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| J. OWENS, *et al.*, | ) | By: Norman K. Moon |
|     Defendants. | ) | United States District Judge |

    Billy Joe Walker, a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that the defendants retaliated against him, subjected him to cruel and unusual punishment, violated his right to due process, failed to investigate grievances, and denied him access to the grievance process, access to the court, and mental health treatment. The defendants have filed a motion to dismiss, and Walker has responded thereto, making this matter ripe for disposition. After reviewing the record, I conclude that Walker has stated a plausible Eighth Amendment cruel and unusual punishment claim but that his remaining allegations fail to state a claim.[1] Accordingly, I will grant in part and deny it in part the defendants' motion to dismiss.

## I.

    Walker alleges that on April 8, 2013, he filed an Emergency Grievance after Officer Owens "refus[ed]" to let Walker go to his prison job. Officer Owens signed and took the grievance to Lt. Franklin, who sent Officers Owens and Gibson to bring Walker to Lt. Franklin's office. While in Lt. Franklin's office, Lt. Franklin and Sgt. Miller "began to harass and threaten to take [Walker's] job and use physical violence in retaliation for [Walker having filed an] administrative [grievance]."

    On April 18, 2013, Officer Owens wrote two disciplinary charges against Walker for disobeying a direct order and threatening staff. Walker alleges that he did not commit either of those infractions.

---

[1] Walker filed a motion to amend his complaint (Docket No. 55) to add state law claims that correlate to his federal law claims. I will grant that motion, but I decline to exercise supplemental jurisdiction over all of Walker's state law claims, pursuant to 28 U.S.C. § 1367(c), except his claim of intention infliction of emotional distress concerning the time Walker spent in five-point restraints on August 4, 2013.

On April 21, 2013, Walker filed an Informal Complaint, alleging that Owens threatened to use physical force against Walker if Walker came out of his cell for showers or recreation. On April 22, 2013, Walker filed an Emergency Grievance indicating that Officer Owens threatened to have Walker "removed from the incentive program."

On April 22 and 29, 2013, Walker went to disciplinary hearings for his charges of disobeying a direct order and threatening staff, respectively. Walker states that during each of the hearings, he explained to Disciplinary Hearing Officer ("DHO") L. Mullins that the charges were fabricated by Officer Owens and requested that DHO Mullins review relevant documents and videos to "prove [his] innoce[nce]." However, Walker alleges that DHO Mullins "refused to review any relevant evidence," found Walker guilty of both charges, and did not give "any meaningful or justifiable reason" for finding Walker guilty beyond the reasons stated in Officer Owens' report.

On April 24, 2013, Walker alleges that Grievance Coordinators R. Mullins and J. Messer "frustrate[d] [Walker's] grievance process" by "refusing to process [his] complaints." On May 7, 2013, Walker was fired from his job by Sgt. Miller and Unit Manager Swiney.

Walker appealed his disciplinary offense convictions, and, on May 14, 2013, he received an Inmate Request Form response from Assistant Warden Walrath, who indicated that Walker's disciplinary charges "were disposed of per Operating Procedure 861.1." Almost a week later, Walker alleges that he received a Level I grievance response from Warden Mathena, stating that the disciplinary charges had been "disposed of per Operating Procedure 861.1." However, on May 29, 2013, Walker received both of his disciplinary conviction appeals back from Warden Mathena, who indicated that the convictions had been upheld on appeal. On May 30, 2013, the records department confirmed that "there was no disposal of [the disciplinary] charges from [Walker's] record."

On June 3, 2013, Officer Gibson took inmates out for their monthly haircuts and Walker alleges that despite taking six other inmates without searching their cells, when Officer Gibson took Walker out of his cell, he "proceeded to search [Walker's] cell for over 5 minutes, [took] bedding

2

items [that Walker] was allowed to have, . . . and destroyed [Walker's] affidavit." When Walker asked Officer Gibson why he was being singled out, Officer Gibson allegedly responded that he "found out about [Walker's] lawsuit." Walker alleges that Officer Gibson took all of his bedding items as contraband.

On June 10, 2013, Walker filed a civil action, pursuant to § 1983, in this court. *See Walker v. Mathena, et al.,* Civil Action No. 7:13cv274 (W.D. Va. July 10, 2013). On July 10, 2013, I dismissed the action because Walker failed to comply with the court's conditional filing order. However, Walker alleges that he attempted to comply with the order, but his mail was returned to him.

On July 1, 2013, Walker notified Unit Manager Swiney that Officers Owens and Gibson, Sgt. Miller, and Lt. Franklin had harassed and retaliated against him. On July 31, 2013, Grievance Coordinator J. Messer "refused to process" a Regular Grievance.

On August 4, 2013, Walker was placed in five-point restraints from 6:00 a.m. to 9:30 p.m., and Sgt. Sykes and Lt. Still denied him bathroom breaks and meals the entire time. While Walker was in restraints, he alleges that he told Qualified Mental Health Professional ("QMHP") Huff and Capt. Tate that he "was being starved and refused breaks."[2] In response to the defendants' motion to dismiss, Walker alleges that the defendants left him in the restraints "without breaks or food to intentionally inflict psychological torture" and that he "suffered extreme cramping and hunger." Walker filed a Regular Grievance concerning the time he spent in five-point restraints, and Warden Mathena denied the grievance.

On August 13, 2013, Walker was in a medical cell with a camera and on fifteen-minute suicide-watch precautions. When he was being released from that cell, Walker refused to leave and "proceeded to bite open a wound that had stitches." Officer Gibson used Oleoresin Capsicum

---

[2] I note that although Walker alleges that he told QMHP Huff about the denial of breaks and food, he does not pursue a cruel and unusual punishment claim against Huff. *See* Docket No. 22-1, Am. Comp1., Claims for Relief.

3

("OC") spray[3] on Walker.  After the incident, QMHP Moceri "allowed" Walker to be taken out of the medical unit and placed in a "non-camera cell" in five-point restraints.[4]  Walker was charged with a disciplinary infraction.

Walker alleges that he filed several grievance appeals in October 2013, and that Regional Administrator Hinkle upheld all the Level 1 grievance responses.

## II.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).  In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level," *id*., with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, *Chao v. Rivendell Woods, Inc*., 415 F.3d 342, 346 (4th Cir. 2005).  Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

---

[3] OC spray is a chemical agent similar to what is commonly known as pepper spray or mace and irritates a person's eyes, throat, and nose.  *See, e.g., Park v. Shiflett*, 250 F.3d 843, 849 (4th Cir. 2001) (describing the physiological effects of OC spray).

[4] I note that Walker does not raise any claim in this action related to this second placement in five-point restraints.

4

Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

In order to allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (citation omitted). Moreover, "[l]iberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil rights issues." *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009) (*quoting Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978)). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999) (quoting *Sado v. Leland Memorial Hospital*, 933 F. Supp. 490, 493 (D. Md. 1996)).

### III. Retaliation

Walker alleges that defendant Officers Owens and Gibson, Sgt. Miller, and Lt. Franklin retaliated against him for filing administrative and legal actions. Specifically, Walker alleges that Sgt. Miller and Lt. Franklin harassed and threatened to take his job and use physical violence against him in retaliation for filing an administrative action; Officer Owens threatened Walker with violence, threatened to have Walker removed from the "incentive program," and charged Walker with two false disciplinary infractions for filing administrative actions; and Officer Gibson searched his cell and confiscated property in retaliation for filing a prior lawsuit.

It is well settled that state officials may not retaliate against an inmate for exercising constitutional rights, including the right to access the courts. *See Am. Civ. Liberties Union v. Wicomico Cnty.*, 999 F.2d 780, 785 (4th Cir. 1993). However, in order to sustain a cognizable retaliation claim under § 1983, an inmate must point to specific facts supporting his claim of

5

retaliation. *White v. White*, 886 F.2d 721, 724 (4th Cir. 1989). "[B]are assertions of retaliation do not establish a claim of constitutional dimension." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Retaliation claims are "treated with skepticism because 'every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting *Adams*, 40 F.3d at 74). Moreover, to plead a claim of retaliation, a plaintiff must allege specific facts to establish: "(1) the existence of a specific constitutional right; (2) the defendant's intent to retaliate for the exercise of that right; (3) a retaliatory adverse act; and (4) causation." *Lamp v. Wallace*, No. 3:04CV317, 2005 U.S. Dist. LEXIS 43932, at *9, 2005 WL 5303512, at *4 (E.D. Va. Mar. 23, 2005) (citing *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 863 (5th Cir. 2004)). The test for causation requires an inmate to allege facts that plausibly suggest that, "but for the exercise of the protected right, the alleged retaliatory act would not have occurred." *Id.* (citing *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) and *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996)).

Walker has not stated a claim against Officers Owens and Gibson, Sgt. Miller, or Lt. Franklin because he has not alleged specific facts to establish that the defendants intended to retaliate against him for exercising a specific constitutional right. Walker makes bare assertions of retaliation. With regard to Officer Owens, Sgt. Miller, and Lt. Franklin, Walker does not identify the specific constitutional right that he was retaliated against for exercising. Walker claims he was retaliated against for filing grievances. However, an inmate has no constitutional right to participate in grievance proceedings. *Adams*, 40 F.3d at 75. With regard to Officer Gibson, Walker alleges he was retaliated against for filing his prior lawsuit. However, Officer Gibson searched Walker's cell on June 3, 2013, prior to Walker filing the civil action on June 10, 2013. Accordingly, I will grant the defendants' motion to dismiss as to Walker's retaliation claims against Officers Owens and Gibson, Sgt. Miller, and Lt. Franklin.

6

## IV. Cruel and Unusual Punishment

Walker alleges that on August 14, 2013, he was kept in five-point restraints between 6:00 a.m. and 9:30 p.m. and that defendants Sgt. Sykes and Lt. Still denied him meals or bathroom breaks the entire time. Walker also alleges that told defendant Capt. Tate, while in five-point restraints, that he was being "starved and refused breaks" and that he did nothing. In response to the defendants' motion to dismiss, Walker alleges that the defendants left him in the restraints without food or bathroom breaks "to intentionally inflict psychological torture," and that he "suffered extreme cramping and hunger."

The Eighth Amendment prohibits prison officials from inflicting unnecessary and wanton pain and suffering on prisoners. *Whitley v. Albers*, 475 U.S. 312, 320 (1986). To resolve a claim that prison staff's use of force violated the Eighth Amendment, the court must determine whether the force applied was "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 320-21. Whether the force was necessary or intentionally aimed at inflicting unnecessary physical harm depends on factors such as the need for the application of force, the relationship between the need and the amount of force used, the extent of injury inflicted, the extent of the threat to the safety of staff and inmates reasonably perceived by responsible officials, and any efforts made to temper the severity of a forceful response. *Id.* at 321; *see, e.g., Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).

The use of five-point restraints in a good faith effort to control an inmate is not *per se* unconstitutional. *See, e.g., Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996). However, courts have found that continued restraint of this type, without legitimate purpose, can state a constitutional violation. *See id.* at 763. "[When] the immediacy of the disturbance [i]s at an end . . . the unnecessary infliction of continued pain throughout a prolonged time period clearly supports an inference that the guards were acting to punish, rather than to quell the disturbance." *Id.* at 765 (citing *United States v. Cobb*, 905 F.2d 784, 789 (4th Cir. 1990) ("[P]unitive intent behind a

7

defendant's use of force may be inferred when the force is not reasonably related to a legitimate nonpunitive governmental objective.") (internal quotations omitted)). Thus, the continued use of five-point restraints on an inmate who does not currently pose any threat to security or discipline can violate the Eighth Amendment, even when that inmate does not suffer significant physical injuries. *See Sadler v. Young*, 325 F. Supp. 2d 689, 704 (W.D. Va. 2004); *Davis v. Lester*, 156 F. Supp. 2d 588, 594 (W.D. Va. 2001).

Accepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of Walker, I conclude that Walker has stated a plausible Eighth Amendment claim against defendants Sykes, Still, and Tate. Accordingly, I will deny defendants' motion to dismiss as to this claim against these defendants.

### V. Due Process

Walker alleges that defendants DHO Mullins and Warden Mathena violated due process. Specifically, Walker alleges that, at his disciplinary action hearing, DHO Mullins denied him the right to present documentary and video evidence, did not give a "meaningful or justifiable" statement for his finding of guilt, and as a result, failed to give Walker a fair and impartial disciplinary hearing. Walker also claims that Warden Mathena failed to overturn the conviction on appeal. Walker complains that he was fired from his prison job as a result of his the disciplinary convictions.

The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property. To prove a violation of due process, an inmate must show that the government deprived him of a liberty or property interest. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *Sandin v. Conner*, 515 U.S. 472, 493 (1995). In this case, Walker has not been deprived of any liberty or property interest as a result of the disciplinary action hearings. Although Walker alleges he consequently was fired from his prison job, Walker has no protected interest in maintaining that job. *See Altizer v. Paderick*, 569 F.2d 812, 813 (4th Cir. 1978) (custody classifications and work assignments are generally within the discretion of the prison administrator);

8

*see also Gibson v. McEvers*, 631 F.2d 95, 98 (7th Cir. 1980) ("An inmate's expectation of keeping a certain prison job does not amount to a property or liberty interest entitled to protection under the Due Process Clause."); *Bazemore v. United States*, No. 7:05-cv-371, 2005 U.S. Dist. LEXIS 44073, at *8, 2005 WL 6156020, at *3 (W.D. Va. Dec. 1, 2005) ("[A]n inmate has no due process or property interest in acquiring a job while incarcerated[.]"). As Walker has not alleged a deprivation of a liberty or property interest, I conclude that there was no due process violation. Moreover, a violation of a prison operating procedures does not implicate federal due process and is not cognizable via § 1983. *Riccio v. Cnty. of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990). Accordingly, I conclude that Walker has failed to state a claim against DHO Mullins and Warden Mathena and, therefore, will grant the defendants' motion to dismiss as to the due process claims against these defendants.

## VI. Grievances

Walker alleges that defendant Grievance Coordinators R. Mullins and Messer "refused" to process grievances and "intentionally frustrated" the grievance process in violation of his Eighth and Fourteenth Amendment rights. However, there is no constitutional right to participate in the grievance process. *Adams*, 40 F.3d at 75. Accordingly, I conclude that Walker has not stated a cognizable claim against Grievance Coordinators R. Mullins or Messer under § 1983 and, therefore, will grant the motion to dismiss as to these defendants.

Walker also alleges that defendant Regional Administrator Hinkle denied grievances and/or appeals, Warden Mathena denied disciplinary conviction appeals, and Warden Mathena and Assistant Warden Walrath "intentionally misrepresent[ed] documentation in an attempt to deceive [Walker] and cover up for [their] subordinates' [wrongdoings]" when they gave incorrect information in response to an Inmate Request Form and a Level I Grievance. "Ruling against a prisoner on an administrative complaint does not cause or contribute to [a constitutional] violation," and inmates do not have a constitutionally protected right in the grievance procedure. Accordingly, I

9

conclude the defendants are not liable under § 1983 for their responses to the grievances or appeals. *See Brown v. Va. Dep't Corr.*, No. 6:07cv33, 2015 U.S. Dist. LEXIS 12227, at *8, 2009 WL 87459, at *13 (W.D. Va. Jan. 9, 2009) (citing *Adams*, 40 F.3d at 75); *see also Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (holding allegations that prison officials and administrators responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the alleged underlying deprivation). Accordingly, I will grant the defendants' motion to dismiss as to these claims against Hinkle, Mathena, and Walrath.

Walker alleges that defendants Unit Manager Swiney and Regional Administrator Hinkle failed to investigate Walker's grievances that other defendants were violating his rights. However, this claim is not cognizable under § 1983. *See Charles v. Nance*, 186 F. App'x 494, 495 (5th Cir. 2006) (holding that alleged failure to investigate a grievance "fails to assert a due process violation"); *Sweat v. Rennick*, No. 9:11-2908, 2012 U.S. Dist. LEXIS 55200, at *5, 2012 WL 1358721, at *2 (D.S.C. Feb. 7, 2012) ("Plaintiff's complaint that this Defendant has not properly investigated his claims . . . fails to set forth a claim for a violation of a constitutional right."); *Lewis v. Williams*, Nos. 05-13, 05-51, 05-52, 2006 U.S. Dist. LEXIS 8444, at *18-19, 2006 WL 538546, at *7 (D. Del. Mar. 6, 2006) ("[T]he failure to investigate a grievance does not raise a constitutional issue."). Accordingly, I will grant defendants' motion to dismiss as to this claim against defendants Swiney and Hinkle.

## VII. Access to Court

Walker alleges that defendants Pease, Stanley, and Bunch, all mailroom officials at ROSP, denied him access to the courts by "intentionally frustrating" his legal mail and causing his "legal action" to be dismissed. Walker alleges no other facts against these defendants in support of this claim. To state a cause of action under § 1983, a plaintiff must establish that she has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42,

48-49 (1988). Moreover, liability under § 1983 requires personal action by a named defendant. Walker makes a mere conclusory allegation that Pease, Stanley, and Bunch denied him access to the courts by "frustrating" his legal mail and has not alleged how these defendants were personally involved in such a denial.

Further, although inmates have a constitutional right to reasonable access to the courts, a plaintiff must allege specific injury resulting from the alleged denial. *See Lewis v. Casey*, 518 U.S. 343, 349, 351-53 (1996); *Bounds v. Smith*, 430 U.S. 817, 838 (1977). *See also Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (plaintiff failed to identify any actual injury resulting from official conduct); *Strickler v. Waters*, 989 F.2d 1375, 1384 (4th Cir. 1993) (Plaintiff has a basic requirement that he show specific harm or prejudice from the allegedly denied access). In this case, Walker has not alleged any specific injury resulting from the defendants' alleged frustration of Walker's legal mail.[5] Accordingly, I will grant the motion to dismiss as to defendants Pease, Stanley, and Bunch.

### VIII. Mental Health Treatment

Walker alleges that defendant QMHPs Huff and Moceri denied him "proper mental health treatment." In support of this claim, Walker states that Moceri "allowed" Walker to be taken out of the medical unit, where he had been on suicide watch, and placed in a "non-camera" cell in five-point restraints. Walker makes no allegation against Huff with regard to any mental health or other medical treatment. Conclusory allegations, without any factual support, do not state a claim under § 1983. *See Simpson v. Welch*, 900 F.2d 33 (4th Cir. 1990). Accordingly, I conclude that Walker

---

[5] To the extent Walker is referring to this court's dismissal of Civil Action No. 7:13cv274 on July 10, 2013 for failure to comply with the court's order, I note that the action was dismissed without prejudice to Walker's opportunity to refile his claims in a separate action. I also note that Walker raises the same claims in this action that were raised in Civil Action No. 7:13cv274.

has failed to state a medical treatment claim against Huff or Moceri and, therefore, will grant the motion to dismiss as to these claims.[6]

## IX. Harold Clarke

Walker alleges that defendant Director Clarke is responsible for all programs and classification management and that Director Clarke has failed to perform his duties. To the extent Walker is attempting to bring a claim against Director Clarke under the theory of supervisory liability, it fails. In order to set forth a claim for supervisory liability under § 1983, a plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Walker has failed to allege any facts that would establish any of the *Shaw* elements. Walker makes only conclusory accusations about Director Clarke's failure to act. Moreover, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. *Iqbal*, 556

---

[6] Further, to the extent Walker is challenging either Huff's or Moceri's medical decisions, any such claim fails. In order to state a cognizable claim for the unconstitutional denial of medical care, a plaintiff must allege facts sufficient to demonstrate a deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish deliberate indifference, a plaintiff must present facts to evince that the defendants had actual knowledge of and disregard for an objectively serious medical need. *Farmer v. Brennan*, 511 U.S. 825 (1994). A serious medical need has been defined by the Fourth Circuit as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Moreover, a disagreement between an inmate and medical personnel over diagnosis or course of treatment and allegations of malpractice or negligence in treatment does not state a cognizable constitutional claim under the Eighth Amendment. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Estelle*, 429 U.S. at 105-06.
In this case, Walker has not presented facts to evince that the defendants had actual knowledge of and disregard for an objectively serious medical need. In fact, he does not even allege that he had a serious medical need. To the extent it is his opinion that he should have remained in a cell with a camera, rather than being placed in five-point restraints after being on suicide watch, this amounts to nothing more than a disagreement between himself and mental health personnel about how he should have been monitored after he was released suicide watch. Furthermore, he does not allege that he was harmed in any way when he was moved from the medical cell to a "non-camera" cell and placed in five-point restraints. Thus, his allegations do not rise to the level of an Eighth Amendment claim.

12

U.S. at 676; *see also Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); *Robertson v. Sichel,* 127 U.S. 507, 515-16 (1888) ("A public officer or agent is not responsible for the misfeasances or positive wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the sub-agents or servants or other persons properly employed by or under him, in the discharge of his official duties"); *Dunlop v. Munroe,* 11 U.S. 242 (1812) (an official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties). Accordingly, I conclude that Walker has failed to state a constitutional claim against Director Clarke and, therefore, will grant the motion to dismiss as to Director Clarke.

## XI.

For the foregoing reasons, I will grant in part and deny in part the defendants' motion to dismiss.

ENTER: This 27th day of March, 2015.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE